IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DOUGLAS GERRELLE PITTMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:18CV611 |
| | ) | 1:16CR20-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner in this action brings a Motion [Doc. #75] to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He was convicted after a jury trial of one count of possession of counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 472, one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of possession of a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Petitioner received total sentences of 300 months of imprisonment, 8 years of supervised release, $500.00 in special assessments, and a fine of $2,421.00. After an unsuccessful direct appeal, Petitioner filed his current Motion, to which the Government filed a Response [Doc. #92] opposing relief.

Petitioner filed a Reply [Doc. #94], and his § 2255 Motion is now before the Court for a decision.

Facts

The basic facts of the case, as set out in the decision by the United States Court of Appeals for the Fourth Circuit denying Petitioner's direct appeal and supported by the evidence at trial are as follows.

> On the night of April 15, 2015, in Greensboro, North Carolina, a Sheraton Hotel security officer helped Pittman bring a television up to the hotel room in which Pittman was staying. When Pittman opened the hotel-room door using a room key, the security officer "got a strong whiff of what smelled like marijuana." J.A. 115. The security officer did not hear anyone else inside the hotel room.
>
> The next day, Pittman entered a Champs shoe store in a Greensboro shopping mall. Pittman sought to purchase a pair of sneakers and shoe accessories and handed the cashier $230 in ten-dollar bills. The cashier checked each bill using the fraud-fighter system next to the register. Pittman, however, told her not to check the money. The cashier, noticing that Pittman was "fidgety and sweaty," whispered to her manager that the bills were fake. J.A. 66. The manager and the cashier concluded the sale. J.A. 58. Pittman asked on his way out of the store, "[a]m I straight?" J.A. 58. After Pittman left, the Champs employees called mall security. The Greensboro police also responded and found Pittman getting a pedicure in the mall.
>
> The police approached Pittman, told him that they had a report of someone using counterfeit cash, and asked him how he had paid for his purchase at Champs. Pittman pulled a roll of money out of his pocket and gave it to the police. The officers proceeded to sort out the money into piles of counterfeit and real cash. They discovered eight counterfeit fifty-dollar bills, eight counterfeit twenty-dollar bills, and sixteen counterfeit ten-dollar bills ($720 total), along with legitimate currency.
>
> When the officers asked Pittman where he got the money, Pittman "made up [a] story" about selling a car, gave the officers a fake name and birth date, claimed he had no criminal history, and said that he had just moved to Greensboro from Florida and was a student at North Carolina A&T University. J.A. 374, 383, 385, 387. The officers arrested Pittman and confiscated his phone,

wallet, and car keys. They also obtained a search warrant for the hotel room where Pittman had spent the previous night.

In the hotel room, the police found a black-and-tan duffel bag, a green duffel bag, a shopping bag, a white garbage bag containing men's clothing, and three boxes of shoes. The police found more men's clothing in the black-and-tan bag, along with "a large bag of ... marijuana, and a box of sandwich bags." J.A. 146. The green bag contained a Smith & Wesson semiautomatic pistol, counterfeit money, a bag of white powder, a bag "containing an off-white rock-like substance," a bag with "smaller off-white rocks, and a digital scale." J.A. 152, 154, 157.

The police also seized an open bag of Doritos chips, in which they found scraps of counterfeit money cuttings and "some sandwich bags [with] the corners pinched off, which is consistent with packaging marijuana or other narcotics for sale." J.A. 149–50. When the officers shook the bed sheets, they found clippings from counterfeit money. Officers also found a pair of scissors on the counter in the bathroom. Digital-forensic detectives discovered a video on Pittman's phone depicting him rapping and waving a gun, which appeared to be the same gun found in the hotel room.

Following Pittman's arrest, the police located Pittman's girlfriend in the mall parking lot and arrested her for possession of counterfeit currency. The police found cut and uncut counterfeit currency in a tote bag and in her pockets. The police also confiscated her phone.

United States v. Pittman, 696 F. App'x 609, 611-12 (4th Cir.) (footnote omitted), cert. denied, 138 S. Ct. 489 (2017).

Claims

Petitioner raises five possible claims for relief in his Motion, all based on allegations of ineffective assistance of counsel. Petitioner's first three claims all address his attorney's performance at trial. In the first claim, Petitioner contends that counsel provided ineffective assistance by failing to obtain and introduce records related to the registration for the hotel room where officers located the drugs and firearm. In the second claim, Petitioner contends that counsel failed to introduce an identification card and Neiman Marcus credit card which

3

belonged to a person other than Petitioner or his co-defendant and which were located in the bag with the drugs and firearm. In the third claim, Petitioner alleges that counsel misled Petitioner into believing that he had evidence to present at trial that did not exist. Petitioner's final two claims allege ineffective assistance on appeal. In the fourth claim, Petitioner asserts that counsel failed to properly rebut false claims made by the prosecutor. In the fifth claim, Petitioner states that his attorney failed to properly review the Fourth Circuit's opinion on direct appeal, thereby allowing it to make an illegal ruling.

Discussion

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). With respect to the performance prong of Strickland, a petitioner bears the burden of affirmatively showing deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). In considering such a contention, the Court reviews counsel's conduct with a "deferential eye" and "presume[s] that challenged acts are likely the result of a sound trial strategy." Id. With respect to the prejudice prong of Strickland, to show prejudice the petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal quotation omitted). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim-or, for that matter, on any

4

claim-a habeas petitioner must come forward with some evidence that the claim might have merit."), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 n.4 (4th Cir. 1999).

Petitioner's first allegation of ineffective assistance is that trial counsel failed to subpoena the necessary business records and witnesses from the Sheraton Hotel where Petitioner stayed prior to his arrest to establish that neither he nor his co-defendant and ex-girlfriend, Monae Hines, were the person who rented the room at the hotel or paid for it and that persons other than the person renting it could not obtain a key card to the room. Petitioner argues that all of this evidence, coupled with the fact that both he and Hines were arrested outside the hotel room without a key card in their possession, could have persuaded the jury that he did not have constructive possession over the drugs, firearm, and other items found in the room.

Counsel responds to this allegation in an Affidavit (Response, Attach., ¶ 5) in which he states that he attempted to enter the hotel registration receipt into evidence, but could not due to an objection by the Government. However, he did not subpoena a witness to introduce the evidence because it had never been an issue in any prior discussions with the Government. Further, counsel states that, even if admitted, the registration receipt would not have been dispositive because other evidence showed that Petitioner had access to the room.

On this last point counsel is clearly correct and, for that reason, Petitioner cannot establish that any failure to enter the hotel registration into evidence meets the prejudice prong of the Strickland analysis. As set out by the Fourth Circuit on direct appeal, a security guard from the hotel testified that he helped Petitioner move a large television into the room the

5

night before Petitioner's arrest, that Petitioner had a key card and access to the room at that point, and that no one else appeared to be present at the time. Further, as set out in more detail below in conjunction with Petitioner's final claim for relief, Petitioner himself testified at trial that his brother rented the room, that his brother and another friend spent very little time in the room, and that Petitioner spent most of the time in the room after it was rented, including the entire night before his arrest. Given this, adding a hotel registration that confirmed his brother as the person renting the room would not have made a meaningful difference at trial. No evidence contradicted Petitioner's testimony that his brother rented the room or the fact that Petitioner had abundant access to the room during the time in question regardless of who rented it. Petitioner's first claim fails and should be denied due to a lack of prejudice, since Petitioner has not shown that there is a reasonable probability that the result of the proceeding would have been different even if the hotel registration had been admitted, as required to establish ineffective assistance of counsel.

Petitioner's second claim for relief alleges that counsel failed him by not presenting evidence at trial that an identification card and Neiman Marcus credit card found in the same Neiman Marcus bag as the cocaine base and firearm that led to the charges in this case belonged to neither Petitioner nor Hines. Again, counsel's affidavit provides an appropriate explanation for his strategic decision not to present this evidence to the jury. (Response, Attach., ¶ 7.) The identification and credit card belonged to a convicted drug dealer from the area around Charlotte, North Carolina. The Government produced statements during pretrial discovery in which Hines claimed that Petitioner, his brother, and another friend supposedly robbed a drug dealer in the Charlotte area. Counsel feared that raising a question concerning

6

ownership of the Neiman Marcus bag could have opened the door to allow Hines to testify concerning the alleged robbery being the source of the drugs. As it was, she was available as a witness, but the Government chose not to call her to testify.

Not only does the above decision qualify as appropriate trial strategy entitled to deference by the Court, but, as the Government points out, Petitioner's testimony attributed possession of the bag containing the drugs and gun to his friend "Marquis." (Trial Tr. Vol. 3 [Doc. #55] at 90.) Introducing a completely different source for the bag would not have aided this strategy. Had Hines testified that the bag came from a robbery in which Petitioner participated, this would have greatly harmed, not aided, his case. Petitioner contends that Hines could not have testified concerning the robbery because she did not witness it. However, he is incorrect. She could have testified that he told her about the robbery whether she witnessed it or not. In the end, counsel made a strategic decision to rely on Petitioner's testimony that his brother's friend owned the bag with the drugs and firearm rather than introduce contradictory evidence and possibly open the door to Petitioner's girlfriend testifying and tying Petitioner to the bag through the robbery. This was sound trial strategy under the circumstances and does not constitute ineffective assistance of counsel.

Petitioner's third claim is that his former attorney led him to believe that he had evidence to present which did not exist. For the most part, Petitioner does not identify this alleged non-existent evidence, which means that his claim is conclusory. There is one exception, which is that Petitioner asserts that counsel advised him "that he had evidence that could discredit [Petitioner's] phone record, showing that none of the times or dates were accurate for the jury to determine when the video of [Petitioner] holding a gun was recorded

7

in the phone." (Motion at 17.) Petitioner does not explain the import of this alleged mistake concerning the evidence other than to say that had he known that the evidence cited by counsel was "false," he would have prepared his defense based on exculpatory evidence that did actually exist. He again identifies absolutely no such evidence. Therefore, this claim is fatally conclusory, and to the extent any claim is asserted, Petitioner has failed to show that there is a reasonable probability that the result of the proceeding would have been different. Therefore, this claim should be denied.

Petitioner's next two claims for relief allege ineffective assistance of counsel on appeal. Such claims are judged using the Strickland test set out previously. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745 (1983); see also Smith v. Murray, 477 U.S. 527 (1986); Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. Jones, 463 U.S. at 751-52. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (internal quotations omitted).

Petitioner first contends that counsel should have challenged or corrected two false arguments raised by the Government on appeal. The first concerns a statement by the Government that Petitioner admitted speaking with the employees at the Champs sporting goods store about the drug "Molly." Petitioner contends that the trial transcripts show that

8

he did not speak to them about "Molly." However, this is incorrect. The transcripts actually show that Petitioner testified that "Molly" "came up" during his conversation with the employees. (Trial Tr. Vol. 3 [Doc. #55] at 131.) Thus, there was no error or false statement for counsel to correct.

Petitioner also faults counsel for not challenging a statement by the Government that he shook his head no while telling the Champs employee not to check the counterfeit money. Petitioner claims that a video introduced at trial did not show him shaking his head as he spoke to the employee. The testimony at trial by the employee was that Petitioner did shake his head no when telling her not to check the money, although she admitted that she did not see this on video. (Trial Tr. Vol. 1 [Doc. #52] at 26; Trial Tr. Vol. 2 [Doc. #56] at 13-14.) Therefore, the Government's statement is not false as Petitioner contends. To the extent the video evidence contradicted the clerk's testimony, counsel could have pointed this out. However, Petitioner does not explain how this prejudiced him on appeal. His argument on appeal was that there was not sufficient evidence to convict him. As to the counterfeiting charge, his statements to the store employees, whether he shook his head or not, provided evidence against him. The same is true for the fact that Petitioner was found by officers with even more counterfeit money on his person and that trimmings from counterfeit bills were located in the hotel room to which he had access, including in the bed where he testified he slept the night before he passed the counterfeit bills and in the bag of chips that he testified he ate from before spending the night in the room. (Trial Tr. Vol. 2 [Doc. #56] at 91-92, 99-100; Trial Tr. Vol. 3 [Doc. #55] at 115-17.) Given all of that evidence, counsel's alleged failure to point to a relatively minor difference between the store employee's testimony and the video could not

9

have prejudiced Petitioner. He again fails to satisfy the Strickland test and his claim should be denied.

Finally, Petitioner argues that the Fourth Circuit incorrectly wrote on appeal that the contraband at issue in the case was found behind a dresser drawer in the bedroom from which an officer saw Petitioner exit. He faults counsel for not challenging this misstatement in a request for rehearing. However, the Fourth Circuit did not make the misstatement as claimed by Petitioner. Instead, the language he cites is contained in a parenthetical following a citation to a different case which the Fourth Circuit relied upon in writing its opinion. Pittman, 696 F. App'x at 615. The events described occurred in the case cited, not Petitioner's case, and the Fourth Circuit never stated otherwise. There was no error for counsel to attempt to argue or correct. Petitioner also contends that the Fourth Circuit erroneously stated that he spent the most time in the hotel room, but that this statement is not supported by the evidence in the case. Although the Fourth Circuit did make this statement, id., it is clearly supported by the evidence at trial. Petitioner himself testified that he, his brother, and Marquis, drove from the Charlotte area to the hotel in Greensboro on April 15, 2015. (Trial Tr. Vol. 3 [Doc. #55] at 82.) His brother rented the hotel room and called Petitioner and Marquis with the room number. (Id. at 84.) When they arrived at the room, his brother was leaving, but they all then returned to the room and stayed for 30-40 minutes until Petitioner's brother and Marquis left Petitioner in the room alone. (Id.) When they returned two or three hours later, Petitioner showered and came out to find his brother and Marquis preparing to leave for a club or bar. (Id. at 85.) They then showered and left, but called Petitioner to get the television from the car and take it to the room, which he did with help from the hotel security officer. (Id. at 86-

87.) The security officer testified that this occurred at approximately 10:30 at night. (Trial Tr. Vol. 2 at 70.) Petitioner then spent the entire night there alone, before being awakened at 7:00 a.m. by a call from Hines, who arrived shortly thereafter. (Trial Tr. Vol. 3 at 88.) Petitioner testified that he left the hotel for the mall before 8:00 am and that he was arrested at the mall three or four hours later. (Id. at 122.) Hines was located in the mall parking lot around the same time. (Trial Tr. Vol. 2 at 46-47, 52-54.) Police searched the hotel room before 2:30 that afternoon. (Id. at 69.) Based on the timeline produced primarily from his own testimony, Petitioner necessarily spent far more time in the room than any of the other persons involved. Therefore, the statement in the opinion on direct appeal was correct and Petitioner's attorney did not provide ineffective assistance of counsel. Petitioner's fifth claim for relief should also be denied.

In addition to his § 2255 Motion, Petitioner also filed several other motions which remain pending on the docket. First, Petitioner filed a Motion [Doc. #82] seeking reimbursement for the alleged overpayment of special assessment fees. Essentially, Petitioner asserts that, because some of his sentences were concurrent, charging him a $100 special assessment fee for each of his five counts of conviction amounted to consecutive special assessments and was, therefore, incorrect. He claims to have overpaid the fees and seeks a refund. Although Petitioner's sentences of imprisonment and supervised release were partially concurrent with each other, he is incorrect concerning the special assessment fees. The oral pronouncement of his sentence and the Judgment in his case make it clear that Petitioner was given a $100 special assessment for each count, amounting to a total of $500. (Sent. Tr. [Doc.

11

#54] at 22; Judgment [Doc. #44] at 5.)  There is no error or overpayment and Petitioner is due no reimbursement.  This Motion should be denied.

Related more directly to his § 2255 Motion, Petitioner filed a Motion [Doc. #95] seeking to strike the affidavit of his former counsel, a Motion [Doc. #96] for a hearing on his § 2255 motion, a Motion [Doc. #97] to expedite a decision on his § 2255 motion, a Motion [Doc. #98] to appoint an attorney to represent him on his § 2255 Motion, and a document entitled "Writ of Mandamus" which the Court docketed as a Motion [Doc. #99] and which argues that Petitioner will prevail on his § 2255 motion because Petitioner is innocent of the crimes for which he was convicted and because the evidence at trial did not sufficiently prove his guilt beyond a reasonable doubt.  All of these Motions fail.

For the reasons discussed above, Petitioner's § 2255 Motion is without merit.  Therefore, no hearing or appointment of counsel is required or appropriate and Petitioner's Motions requesting counsel and a hearing will be denied.  Further, the entry of this Order and Recommendation moots Petitioner's Motion seeking an expedited resolution of the matter and it will be denied on that basis.  As for Petitioner's Motion seeking to strike his former attorney's affidavit, Petitioner claims that the affidavit is "misleading," and Petitioner disagrees with the affidavit's legal analysis and conclusions in several respects.  This is not a basis for striking the affidavit, but instead constitutes further argument as to why Petitioner believes he should prevail on the § 2255 Motion.  The Court considered those arguments in deciding the § 2255 Motion, but has concluded that there are no material factual disputes and no need for a hearing.  The Motion to strike the affidavit will be denied.  Finally, in the "Writ of Mandamus," Petitioner argues that the evidence at trial was insufficient to support his guilt.

Petitioner would have to raise any such argument in his § 2255 Motion, but he does not make a clear motion to amend to assert new claims. Even if the Court treated the "Writ of Mandamus" as a motion to amend, it would fail because Petitioner raised and lost sufficiency of the evidence arguments on direct appeal. Pittman, 696 F. App'x. at 614-17. He cannot re-raise and re-argue them in a § 2255 Motion, see Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976), and they would fail for the reasons set out by the Fourth Circuit in any event. Therefore, Petitioner's "Writ of Mandamus" should be denied to the extent it is a motion to amend or for other relief.

IT IS THEREFORE ORDERED that Petitioner's Motions [Doc. #95, #96, #97, #98] seeking to strike his attorney's affidavit, have a hearing on his § 2255 motion, expedite this action, and have an attorney appointed are all denied for the reasons set out above.

IT IS RECOMMENDED that Petitioner's Motion [Doc. #82] seeking reimbursement of his special assessment fees, "Writ of Mandamus" [Doc. #99] to the extent it seeks to raise a claim or amend Petitioner's § 2255 Motion, and § 2255 Motion [Doc. #75] all be denied, that this action be dismissed, and that, there being no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability not issue.

This, the 8th day of October, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge